# Ilyus v. Buch, Appellant.

*Judgment—Opening judgment—Evidence—Forgery.*

A proceeding to open a judgment is an appeal to the equity powers of the court; the judge exercises the functions of a chancellor, is vested with a discretion to pass upon the weight of the evidence and the credibility of the witnesses, and to dispose of the question presented upon equitable principles. The action of the court below will only be reversed in such a case where an abuse of judicial discretion is apparent. These principles apply where an allegation of forgery is involved with the same force and effects as in other cases.

A court cannot be charged with abuse of discretion in discharging a rule to open a judgment entered upon a bond, where it appears that the defendant and her sister testified that the signature to the bond was forged, but it also appears that neither of the witnesses had seen the bond for ten years, that nine years before, it had been removed from the court records by the attorney for the defendants, had not been restored to the records, nor produced at the hearing, and that no adequate search had been made for it.

Argued Nov. 15, 1906. Appeal, No. 166, Oct. T., 1906, by defendant, from order of C. P. Lancaster Co., April T., 1893, No. 463, discharging rule to open judgment in case of A. C. Ilyus, Administrator d. b. n. c. t. a. of Ferdinand Utermoehl, deceased, v. Maria Buch. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Rule to open judgment.
The facts are stated in the opinion of the Superior Court.

44      ILYUS *v.* BUCH, Appellant.

*Error assigned* was the order of the court.

*B. F. Davis*, for appellant.—An issue should have been awarded: Schomaker v. Dean, 201 Pa. 439; Heist v. Tobias, 182 Pa. 442; Shannon v. Castner, 21 Pa. Superior Ct. 294; Bldg. Assn. v. Walton, 181 Pa. 201; Toomey's Appeal, 150 Pa. 535; Com. v. Pioso, 17 Pa. Superior Ct. 45; Darlington's Est., 147 Pa. 624; Crane v. Hastings, 11 Pa. Dist. Rep. 75; Baskin v. Seechrist, 6 Pa. 154; Clark v. Trindle, 52 Pa. 492; Myer v. Verner, 10 W. N. C. 138.

*W. U. Hensel*, for appellee.—The motion to open a judgment is an appeal to the equity side of the court: O'Hara v. Baum, 82 Pa. 416; Jenkintown Nat. Bank's Appeal, 124 Pa. 337; Kaier Co. v. O'Brien, 202 Pa. 153; Kneedler's App., 92 Pa. 428; Wise's App., 99 Pa. 193; Schenck's App., 94 Pa. 37.

There is no adequate proof to sustain the petition to open: Kneedler's App., 92 Pa. 428; Wise's App., 99 Pa. 193.

The court sitting as a chancellor must judge of the evidence and determine its sufficiency: Wernet's App., 91 Pa. 319; Earley's App., 90 Pa. 321; Zaring v. Earley, 2 Pearson, 352; Fuhrman v. Fuhrman, 13 Lancaster Bar. 123; Philbin v. Davinger, 29 Legal Int. 325; Knarr v. Elgren, 19 W. N. C. 531; Jenkintown Nat. Bank's App., 23 W. N. C. 359.

In a rule to open judgment, where the defendant swears the signature is forged and the plaintiff swears that he saw defendant sign the same, and is corroborated by other circumstances, there is not sufficient grounds to open judgment: Ward v. Ward, 4 Lanc. Law Rev. 306; Roenigk's Appeal, 2 Cent. Repr. 68; Vogeley's Appeal, 15 Atl. Repr. 878; Rhine v. Swartley, 16 Atl. Repr. 846; Keener v. Shank, 7 Lanc. Law Rev. 339; Barton's Appeal, 5 Cent. Repr. 459; Bender v. Gabel, 4 Delaware Co. Rep. 192; Essick's Appeal, 1 Monaghan, 588.

No adequate explanation is given for the disappearance of the bond: Ward v. Letzkus, 152 Pa. 318; Welch v. Challen, 31 Kan. 696.

OPINION BY PORTER, J., October 7, 1907:

Mary A. Young, executrix of the last will of Ferdinand

Utermoehl, deceased, caused judgment to be entered in the court below, on June 24, 1893, against Maria Buch, upon a judgment bond, purporting to have been executed by the defendant, which was found among the securities of the decedent. The defendant, on March 10, 1894, presented her petition to the court alleging that her signature to the bond was a forgery, and obtained a rule to show cause why the judgment should not be opened. The plaintiff, Mary A. Young, executrix, filed an answer denying the allegations of the petition, and averring that the signature to the bond was the genuine signature of the defendant. Nothing further was done in the case until June 14, 1906, when the defendant took the depositions of Maria Buch, the defendant, and Katie Buch, her sister, and filed the same in court. The plaintiff took no depositions, and the court, after argument, on July 7, 1906, discharged the rule to open the judgment. Mary A. Young, executrix, having died, A. C. Ilyus, administrator d. b. n. c. t. a. of Ferdinand Utermoehl, was, on July 21, 1906, substituted as plaintiff. The defendant appeals from the order of the court below discharging the rule to show cause why the judgment should not be opened.

The learned counsel representing the appellant contends that because Maria Buch and Katie Buch testified in their depositions taken on June 14, 1906, that the signature of the former to the bond in question was forged, that a question was thus raised upon which the defendant was entitled of right to have the case submitted to a jury. We cannot, however, accept the view that upon every allegation of forgery by a defendant the court to which his petition for relief is addressed is bound to open a judgment. A proceeding to open a judgment is an appeal to the equity powers of the court; the judge exercises the functions of a chancellor, is vested with a discretion to pass upon the weight of the evidence and the credibility of the witnesses, and to dispose of the question presented upon equitable principles. The action of the court below will only be reversed in such a case where an abuse of judicial discretion is apparent. These principles apply where an allegation of forgery is involved with the same force and effect as in other cases : Shannon v. Castner, 21 Pa. Superior Ct. 294 ; Augustine v. Wolf, 215 Pa. 558.

The defendant and her sister, it is true, both testified that the signature of the defendant upon the bond was forged, but they did not have the paper before them at the time their depositions were taken, nor, according to their own testimony, had they seen it for over ten years.   The attorney for the defendant had taken the bond from the' office of the prothonotary of the court on March 9, 1894, and has never since returned it to the files.   He was attorney in this case for this defendant and still continues to be such ; he was the mere agent of his client, and the neglect of one was the neglect of the other : Ward v. Letzkus, 152 Pa. 318.   There was no evidence that any search, reasonable or otherwise, had been made for the paper, and in the absence of such evidence it could not be treated as a lost document.   The failure to produce the paper, or to make any reasonable attempt to account for its nonproduction, was a circumstance which it was proper for the court below to take into consideration in determining the weight to which the testimony of the defendant and her sister, who had not seen the paper for many years, was entitled.

The bond having been taken from the record, by one for whose act the defendant is responsible, and never having been returned, the plaintiff was thus deprived of any opportunity to produce evidence as to the genuineness of the signature. The payee had died before the judgment was entered and one of the subscribing witnesses, Moses Buch, had died shortly after the granting of the rule to show cause why the judgment should not be opened.   The failure to return the bond to the files thus rendered it absolutely impossible for the plaintiff to prepare for the proper disposition of this rule and, in case the judgment had been opened, would have rendered a fair trial of the case impossible.   The deposition of the attorney for the defendant who had taken the paper from the files was taken, but failed to show that any search had been made for the paper or any reasonable effort made to produce it.   The witness said he had no doubt he had taken the paper out of the office to prepare the petition upon which the rule to open the judgment was obtained, but that " the matter had escaped his memory, as it had occurred some years ago."   This witness also testified that in November, 1895, at the trial of a case between H. G. Buch and Mary A. Young, executrix of Ferdinand Uter-

moehl, the bond in question had been exhibited by one of the counsel for Mary A. Young, executrix to Maria Buch, who was then a witness and had interrogated her with regard to the same. He did not testify, however, that he himself had then parted with the actual control and custody of the bond, nor that it had ever passed into the possession of any other person. The testimony of the witness made clearly manifest the fact that he considered the failure to produce the bond a matter of but little importance. His evidence fails to show that he had made either search for or inquiry about the bond. The case having been thus presented to the court below, we are not satisfied that the learned judge, when he refused to open the judgment, was guilty of an abuse of the discretion with which he was by law invested.

The judgment is affirmed.


DISSENTING OPINION BY MORRISON, J.:

I find myself unable to agree with the majority opinion in this case and will, therefore, endeavor to state the reasons moving me to dissent.

In discharging the rule to open the judgment the learned court below seems to have been controlled by the following considerations : (1) The bond was not produced and shown to the witnesses when their testimony was taken and this deprived the plaintiff of the right of calling witnesses and attempting to show that the signature thereto was genuine ; (2) that the defendant was incompetent to testify for the reason that the other party to the thing in action was dead : Act of May 23, 1887, sec. 5, P. L. 158; (3) that the judgment should not be opened on the testimony of Katie Buch that the signature was a forgery, because, " this testimony does not meet the requirements of the court in such cases, which is that in order to entitle the defendant to have a judgment opened, it is necessary for him or her to show by the testimony of two witnesses, or that of one witness and corroborating circumstances, the facts upon which the application is based." I will briefly consider these reasons in their order.

It is true that the counsel for the defendant ought to have produced the bond, if he could, and that, unexplained, his failure to produce it tends to cast suspicion on the good faith of

the defense. Also that in its absence, it will be difficult to try the question of its forgery fairly to either party. The court says he would refuse to open the judgment on this ground alone. But Mr. Davis testified in regard to the nonproduction of the bond and while his testimony may not be, in its character, and the manner of giving it, entirely satisfactory, yet I do not think, in the circumstances, that the court was justified in drawing so strong a presumption against the good faith of the defendant. Mr. Davis testified : " I have not been able as yet to find that paper; I do not think I have it; did not know it was charged against me until to-day by the clerk." This testimony does not show how much search Mr. Davis made for the bond, but it implies a search and if the other side desired a fuller statement it could have been brought out by cross-examination. Suppose the bond is honestly lost and the defendant and her counsel are unable to produce it, does it follow that a judgment entered on a forged bond must stand and be collected? I think not. If the judgment were opened and an issue framed, and at the trial the bond could not be produced, it would be a strong circumstance against the defendant when it appeared to have been last seen in the possession of her counsel, but such circumstance would not necessarily be conclusive. The defendant and her sister Katie both testified, positively, to having seen the bond and that the signature thereto is a forgery.

The majority opinion cites Ward v. Letzkus, 152 Pa. 318, in support of the position that Mr. Davis was the mere agent of his client and the neglect of one was the neglect of the other. I think there is a marked distinction between that case and the present one. That was a case where the appellant from the judgment of a justice put the filing of the transcript of appeal in the hands of his attorney who forgot to file it in time. The act of assembly fixed that time and the court had no power to extend it. The case was not as if the justice had refused to give a transcript. The attorney was the agent of the appellant and the latter could not claim immunity from his oversight. But where an attorney loses a paper, without fault on the part of the client, and there is no statutory obstruction, it does not seem logical nor just to deny the party the relief which the allegation of forgery demands.

I am not prepared to agree with the learned court below that the defendant was incompetent to testify to anything relating to the judgment. I consider her competent to testify that she had seen the bond and that her name thereto was a forgery. This she did testify to pointedly.. It is conceded that she could not testify to what occurred between her and the decedent in his lifetime, but her judgment formed on an examination of the signature is nothing that occurred between her and the decedent. It is her independent judgment based on an inspection of the signature. In Toomey's Est., Toomey's Appeal, 150 Pa. 535, the court below expressly held to that effect; that it was in the nature, not of a matter occurring in John Toomey's lifetime, but of a fact, or state of facts, existing after his death. I think the reasoning of the learned court in that case is sound. On appeal the judgment of the court was affirmed, per curiam, but the Supreme Court did not explicitly pass upon that point. Upon sound legal principles and reason, it must be that if A forges an instrument against B purporting to show that the latter had borrowed money and given the obligation therefor, and A puts the writing in his safe and dies, and thereafter his legal representatives attempt to collect it, B can look at the instrument and testify that it is not his signature; that it is a forgery. The very nature of the transaction conclusively shows that A is not pretending to testify to anything that happened between himself and the decedent. I think the testimony of Maria Buch that the signature to the bond was not hers, but a forgery, was competent.

Was the court right in holding that in an alleged forgery case the judgment will not be opened except on the testimony of two witnesses, or of one witness and corroborating circumstances equivalent to another? I think not, and upon this question there is clear authority. In Schomaker, Appellant, v. Dean, 201 Pa. 439, Mr. Justice FELL (p. 441) said: "There is, however, no merit in the contention that the court erred in opening the judgment. The defendant in his petition alleged that he never signed nor delivered the note, nor authorized anyone to do so for him, and that his signature thereto was a forgery. The plaintiff in his answer averred that the note had been duly signed. This raised an issue on which the defendant was entitled to go to a jury."

See also Shannon v. Castner, 21 Pa. Superior Ct. 294, especially the opinion of RICE, P. J., on p. 320.

In the Schomaker case the court opened the judgment on the petition averring a forgery and an answer averring that the note was duly signed, without more.   I think justice requires that when a person swears positively that his signature to a writing is a forgery, and he is only disputed by the writing itself, he is entitled to go to a jury.

In the present case the petition of Maria Buch avers that her name to the bond is a forgery, and her positive testimony is to the same effect, and this is supplemented by the positive testimony of Katie Buch that the signature to the bond is not Maria's but a forgery, and that the witness' name and that of Moses Buch, as subscribing witnesses, are forgeries. Under this state of facts it seems to me clear that the learned court ought to have opened the judgment and permitted the question of whether the signature of the defendant to the bond was forged to have gone to a jury.   Both sides in this contest seem guilty of serious laches and on that ground they stand about even.

The majority opinion cites Augustine v. Wolf, 215 Pa. 558, where it is said : " On application to open a judgment it is proper for the court below to weigh the evidence and to decide according to the preponderance thereof, and the appellate court will not reverse for the exercise of a sound discretion.

" The court to which an application is made to open a judgment may judge the weight of the evidence and the credibility of the witnesses, and is not bound, even when there is a conflict of testimony, to send the case to a jury.   The whole proceeding resolves itself into the exercise of a sound, judicial discretion."   I fully recognize the above as the settled law on this question.   But that case, on its facts, differs widely from the one at bar.   There the evidence was in conflict.   Here, we have the defendant as soon as she learned of the judgment, and ever since, insisting that her name to the bond is a forgery. All of the testimony in the case supports that contention.   The appellee offered no testimony whatever, and in refusing to open the judgment, judging from the testimony and the reasons given by the court below, I am forced to the conclusion that a sound judicial discretion was not exercised.

Considerable importance is given by counsel for appellee to the alleged fact that Maria Buch executed the bond in 1880 and paid interest thereon until April 1, 1892. But where is the evidence that she paid any interest on this bond? There is not a scintilla of competent evidence to that effect. Evidence is alleged to be found in the indorsements on the bond, made by Untermoehl, of the payment of interest for about twelve years. But this is only the ex parte statement of the holder of the alleged forged instrument. If there had been competent proof of the payment by the defendant of interest on this bond for twelve years, it would have been very strong evidence that she executed and delivered it. But there is no such evidence. It is just possible that Untermoehl made the indorsements on the bond without receiving a cent of interest, for the very purpose of manufacturing evidence of the genuineness of the instrument.

I would reverse the order discharging the rule, open the judgment, and send the question of forgery to a jury.